Argued June 25, reversed and remanded October 2, 1928.

## N. MILLER v. CITY OF WOODBURN.

(270 Pac. 781.)

For appellant there was a brief over the names of *Mr. Walter C. Winslow* and *Messrs. McCamant & Thompson,* with oral arguments by *Mr. W. Lair Thompson* and *Mr. Winslow.*

. For respondent there was a brief over the names of *Mr. Blaine McCord* and *Messrs. Carson & Carson,* with oral arguments by *Mr. Allen G. Carson* and *Mr. McCord.*

BROWN, J.—Plaintiff earnestly contends that the court should have directed a verdict in his favor. His particular grievance is that, by reason of the acts of the defendant in increasing the flowage of waters in Ferrier Creek, he lost the use and rental of certain lands which he had intended to reclaim and let for the purpose of agriculture and horticulture.

█ █ Plaintiff is a riparian owner and is of course entitled to the rights and privileges of such owner. It is likewise the defendant's right and privilege to make reasonable use of that slow, sluggish stream called Ferrier Creek. However, a municipal corporation has no more right to pollute the waters of a stream or to injure the lands of another than has a natural person. Much of the testimony in the cause, some of the court's instructions and the pleadings make reference to the pollution of the waters of Ferrier Creek. Much evidence was adduced by plaintiff relating to the defendant's emptying its sewage into Ferrier Creek, and to the impurity of the waters that flowed down that stream. And the defendant, by its cross-examination of witnesses relating to the custom of disposing of sewage as practiced by certain municipal corporations along the Willamette River, likewise went beyond the issues made by the pleadings.

█ Custom is not a defense in this case, and if it were it could not be relied upon unless pleaded: *Simms* v. *Sullivan,* 100 Or. 487 (198 Pac. 240, 15 A. L. R. 678). The plaintiff's cause of action is

founded upon the injury to his real property brought about by the increased flow of the waters of Ferrier Creek to such an extent that he has been prevented from draining the lands and thus making them fit for cultivation. Plaintiff does not pretend that he has used, or that he contemplates the use of, the waters of that creek for domestic purposes, or for manufacturing or irrigation, or that the pollution has in any manner affected his property, convenience or happiness. The increase in flow, he asserts, has resulted from the act of defendant in pumping water out of wells and discharging it through its sewer, thus flooding plaintiff's beaver dam lands. He asserts, and his assertion is supported by the record, that some of defendant's own witnesses testified that a portion of the water pumped from the wells of the City of Woodburn is emptied through the sewers of the city into Ferrier Creek, and that the natural flow of that creek is increased thereby. But there is other testimony to the effect that the city's pumping plant has not increased the flow of that creek to the damage of the plaintiff. There is much testimony tending to show that plaintiff's alleged beaver dam land is a landlocked bog, and that, on account of the topography of the surrounding land, it is not possible for plaintiff to drain this land without the co-operation of neighboring land owners.

Under the record, we do not think that the court erred in denying plaintiff's motion for a directed verdict.

■ The plaintiff assigns error of the court in giving the following instruction:

"You are further instructed that Ferrier Creek, a flowing stream, if such you find it to be, was, at all the times concerned in this action, capable of dis-

solving and holding in solution a certain amount of excrementitious matter and carrying it away with its flow, so as not to interfere materially with the purity and usefulness of the water; and if you find from the evidence that this condition was maintained, the plaintiff has no cause of complaint, although the excrement was cast into the stream by defendant."

This instruction is not based upon the record, and is therefore not applicable here. But, say the defense, the instruction is supported by the law governing judicial knowledge of the court. Section 136, Or. L., provides:

"Whenever the knowledge of the court is by this Code made evidence of a fact, the court is to declare such knowledge to the jury, who are bound to accept it as conclusive."

Judicial knowledge of the court is defined at Section 728, Or. L., and the facts within the court's judicial knowledge appear at Section 729. Subdivision 8 of Section 729 sets out, among the facts judicially noticed by the court, "the laws of nature," and provides that "in all these cases the court may resort for its aid to appropriate books or documents of reference." However, this neither applies to the issues relating to damages made by the pleadings nor the evidence.

■ ■ The plaintiff likewise insists that the court erred in instructing the jury as follows:

"You are further instructed that if you find from the evidence that the plaintiff has not exercised reasonable and ordinary diligence in protecting himself against the continuing damage, if any, to his property, you should eliminate the consequential or additional or continuing damage which plaintiff might have suffered, if you find that he could by the exercise of reasonable diligence and expenditure of a reason-

able sum of money have prevented any further or additional damage, if any, to his premises after the first damage, if any, had occurred; that is to say, if plaintiff by his carelessness allowed the damage to be augmented and increase the loss, such increase of loss falls upon himself, and prevents the recovery of additional damages therefor from defendant. By this, the court does not intend that the jury should understand that such lack of reasonable and ordinary diligence, if any you find from the evidence, would necessarily totally bar plaintiff from recovering damages, but it is a matter which you should consider in assessing the amount of damages, if any; that is, it is a matter to be considered in mitigation or lessening of the damages, if any, and not a bar or prevention of recovery thereof.''

The giving of the foregoing instruction was erroneous. The defendant's own testimony is to the effect that plaintiff was not damaged because of the fact that he could not drain his bog. The testimony shows, in effect, that the lands for miles surrounding plaintiff's swamp or beaver dam land are higher than the impounded waters, and that plaintiff's land could be drained only by going through his neighbors' property. And the record discloses no right or privilege to invade the property of others for the purpose of draining his land or lessening the damage. Besides, the foul and polluted waters emptied by the City of Woodburn into Ferrier Creek, and which flow upon plaintiff's premises, constitute a public nuisance; and the burden of authority is to the effect that a plaintiff who comes into court for damage to his property by reason of a public nuisance created or maintained by the defendant is not required to minimize his damage. On this subject, 2 Wood on Nuisances, Section 844, says:

"A person injured by a nuisance is not precluded from a recovery by the fact that he might by small exertion and small expenditure have prevented the injury; the rule being that as it was the defendant's duty to abstain from the creation of the nuisance, and having created it adjoining owners are not bound to guard against the consequences ensuing therefrom, when in order to do so they are required to expend time or money."

In support of the foregoing, see *Johnston* v. *Galva*, 316 Ill. 598 (147 N. E. 453, 38 A. L. R. 1384), where the Illinois Supreme Court wrote:

"The rule requiring the injured party to protect himself from the consequences of the wrongful act of another by the exercise of ordinary effort, care, and expense on his part, does not apply in cases of nuisances: *Jacksonville* v. *Doan*, 145 Ill. 23 (33 N. E. 878); *Jacksonville* v. *Lambert*, 62 Ill. 519; *Aurora* v. *Reed*, 57 Ill. 29 (11 Am. Rep. 1); *American Smelting & Ref. Co.* v. *Riverside Dairy & Stock Farm*, 149 C. C. A. 562 (236 Fed. 510, 13 N. C. C. A. 732); *Price* v. *High Shoals Mfg. Co.*, 132 Ga. 246 (64 S. E. 87, 22 L. R. A. (N. S.) 684); * * 17 R. C. L. 717; 2 Wood, Nuisances (3 ed.), 844; 1 Wood, Nuisances (3 ed.), 435; *Paddock* v. *Somes*, 102 Mo. 226 (14 S. W. 746, 10 L. R. A. 254); *Niagara Oil Co.* v. *Ogle*, 177 Ind. 292 (98 N. E. 60, Ann. Cas. 1914D, 67, 42 L. R. A. (N. S.) 714); *Holsman* v. *Boiling Spring Bleaching Co.*, 14 N. J. Eq. 335."

*Theiler* v. *Tillamook County*, 81 Or. 277 (158 Pac. 804), and *Adams* v. *Clover Hill Farms*, 86 Or. 140 (167 Pac. 1015), present a different state of facts, and are therefore not in point.

In the case at bar, the flood waters complained of could be carried away only by a drainage canal through the lands of other proprietors; and, without recourse to the law, this plaintiff could not prevent

the defendant from pumping its waters into the drainage system that flowed into Ferrier Creek.

█ The court properly instructed the jury that this was an action on the case. The alleged injury forming the basis of this action was not immediate, but consequential, and any action for such injury would be controlled by Section 8, Or. L.: See 26 R. C. L. 988.

This case is reversed and remanded.

REVERSED AND REMANDED.

RAND, C. J., and BEAN and BELT, JJ., concur.